FILED

2006 Oct-20  PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEAST DIVISION

UNITED STATES OF AMERICA          ]
*ex rel* LOCKHART,                ]
                                  ]
    Plaintiff,                    ]
                                  ]
    vs.                           ]     CV-01-CO-02610-NE
                                  ]
PRINCE PREYER, JR., et al.,       ]
                                  ]
    Defendants.                   ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration motions for summary judgment filed

by defendants Madison County, Alabama ("Madison County") and Dr. Prince

Preyer, Jr. ("Dr. Preyer") on June 1, 2006.  (Docs. 66, 68.)  Relator Tommie

Lockhart ("Lockhart") initiated this cause of action on October 15, 2001,

under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, on behalf of

the United States of America ("the Government").[1]  Madison County and Dr.

---

[1]Relator has also sued Dr. Alfred Jarrett, Dr. Sylvanus Ogburia, and Dr. Abdul Jalloh in this matter.  By agreement of the parties and pursuant to this Court's order, Dr. Jarrett was dismissed from this cause without prejudice on August 29, 2006.  (Doc. 78.)  Dr. Ogburia and Dr. Jalloh have not filed dispositive motions.  When the Court

Preyer contend that Relator's claims are barred by 31 U.S.C. § 3730(c)(5) and/or § 3730(e)(3).[2]  The parties have agreed that these threshold statutory issues should be resolved prior to engaging in expensive discovery.   The issues raised in Defendants' motions for summary judgment have been fully briefed and are now ready for decision.   Upon full consideration of the legal arguments and evidence presented by the parties, Defendants' motions for summary judgment will be denied.

II.    Facts.[3]

    In 1999, Madison County, Alabama, received a grant from the United States Department of Labor ("DOL") in the amount of $4,714,613.00 (the "Grant"), for the purpose of operating a Welfare-to-Work program (the

references "Defendants" in this opinion, it is referring only to defendants Madison County and Dr. Preyer, unless otherwise stated.

    [2]In the alternative, Defendants request that if Lockhart's claims are not barred, the Court enter an order limiting his recovery to an amount of $67,223.20.  This is not a summary judgment issue, and the Court will not address it at this time.

    [3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

"Program").  (Doc. 67 ¶ 2.)  Defendant Dr. Prince Preyer, Jr., was a Madison County Commissioner and represented Madison County Commission District Six at that time.  (*Id*. ¶ 4.)  Relator Tommie Lockhart began working for Madison County as Executive Director of the Program on December 21, 1999.  (*Id*. ¶ 5.)  As Executive Director, Relator had the responsibility of overseeing the Program and monitoring requests for payment from Program funds.  (*Id*. ¶ 6.)  His employment with Madison County ended in August 2000.  (*Id*. ¶ 13.)

In or around April 2001, a telephone complaint alleging that Madison County had not complied with federal requirements governing the Program prompted the DOL to initiate an audit for the period of October 1, 1999, through September 30, 2001 (the "Audit").  The field work on the Audit began in June 2001 and continued intermittently until February 2002.  (*Id*. ¶¶ 14-16, Ex. I at 8.)  On September 13, 2002, the DOL issued an "Initial Determination" related to the recommendations made in the Audit report.  (*Id*. ¶ 23.)  A "Final Determination" was released on December 18, 2002.  (*Id*. ¶ 25.)  Pursuant to the results of its Audit and Final Determination, the DOL sought to recover from Madison County $358,229 in federal funds

expended in connection with the Program.  This amount included: personnel costs of $1,827; equipment purchases of $43,553; consultants' charges of $93,133; and contractor's costs of $205,853.  (*Id*. ¶ 26.)  Madison County subsequently requested an administrative hearing to appeal the DOL's demand pursuant to 20 C.F.R. § 6667.900.  (*Id*. ¶ 27.)  At the hearing, the DOL and Madison County presented a settlement agreement in which Madison County agreed to pay the DOL $150,000.  (*Id*. ¶ 28.)  On February 20, 2004, the administrative law judge entered an Order approving the settlement agreement.  (*Id*. ¶ 29.)

Relator Lockhart filed a complaint in this action on October 15, 2001. In his complaint, Lockhart alleges that defendants Madison County, Dr. Preyer, Dr. Jarrett, Dr. Jalloh, and Dr. Ogburia submitted false and/or fraudulent claims for payment under the Program.  (Doc. 1.)  He seeks monetary relief for the United States pursuant to the statutory penalties set forth in 31 U.S.C. § 3729, as well as a personal monetary award in accordance with the FCA, attorneys' fees, and the costs of litigation.  (*Id*.) The Complaint was filed in camera and placed under seal, where it remained without service on Madison County or any other defendant for over

four years.  After the Government served notice of its election to decline intervention in this matter, the Court entered an Order on July 25, 2006, which unsealed the Complaint and directed that the Complaint be served on all defendants.  (Doc. 22.)

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

The False Claims Act "prohibits any person from making false or fraudulent claims for payment to the United States." *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 125 S. Ct. 2444, 2447 (2005) (citing 31 U.S.C. § 3729(a)). Those who violate the Act "are liable for civil penalties up to $10,000 per claim and treble damages. *Id.* The FCA

"sets forth two principal enforcement mechanisms for policing this proscription." *Id.* The Attorney General may sue under § 3730(a), or "private individuals may bring *qui tam* actions in the Government's name" pursuant to § 3730(b). *Id.* The *qui tam* relator "receives up to 30 percent of the proceeds of the action, in addition to attorney's fees and costs." *Id.* (citing §§ 3730(d)(1)-(2)).

A.    31 U.S.C. § 3730(e)(3).

Defendants contend that Relator's *qui tam* action is barred pursuant to 31 U.S.C. § 3730(e)(3), because the fund expenditures detailed in Lockhart's Complaint were the subject of a prior administrative proceeding brought by the Government. (Docs. 66, Ex. A at 6-9; 69 at 2-11.) Section 3730(e)(3) reads:

> In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

Relator argues that the DOL Audit did not constitute an "administrative money penalty proceeding"; therefore, the bar does not apply.

Lockhart filed his *qui tam* action on October 15, 2001.  At that time, the DOL was approximately four months into its "intermittent" investigation for its Program Audit, which concluded in February 2002.  Relator was not employed with Madison County while the Audit was conducted, and the DOL did not issue its Initial Determination pursuant to the results of its Audit until September 13, 2002.  A final demand for payment of disallowed costs was submitted on December 18, 2002; Madison County requested an administrative hearing to appeal the demand; and the parties later notified the administrative law judge that they had settled disputed Program charges.

Based on these facts, this Court cannot conclude that Relator's action is barred pursuant to § 3730(e)(3).  Neither party suggests that the language of the statute is ambiguous.  Construction of a statutory provision begins "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."  *CBS, Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)).  The Government was not a party to any

proceeding for fraud against the defendants in this action at the time Relator filed his *qui tam* action.   The preliminary stages of a DOL investigation into possible noncompliance with federal requirements for the maintenance of one of its programs (and whether the program grant's performance goals were being met) simply is not an "administrative civil money penalty proceeding [whose subject is allegations of fraud or fraudulent transactions] in which the Government is already a party."  In fact, the Eleventh Circuit has previously acknowledged that "[e]ven if a government investigation was pending at the time [a relator] filed his *qui tam* complaint, such fact would not jurisdictionally bar [the relator] from initiating suit under the False Claims Act."  *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1496 n.7 (11th Cir. 1991) (refuting the Government's then-argument that a private relator should wait until the United States declines to bring its own suit before filing a *qui tam* action); *but see Foundation for Fair Contracting, Ltd. v. G&M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 336-37 (D. N.J. 2003) (utilizing a "broad interpretation of subsection (e)(3)" to conclude that a DOL investigation was

an administrative civil money penalty proceeding under the FCA).[4]

Moreover, the facts do not indicate that this is the kind of "parasitic suit[]

by opportunistic late-comers" that courts agree Congress sought to avoid

with provisions such as § 3730(e)(3).  *See, e.g., Costner v. URS Consultants,

Inc.*, 153 F.3d 667, 675-76 (8th Cir. 1998); *United States ex rel. Prayer & Co.

v. Fleet Bank of Maine*, 24 F.3d 320, 326-29 (1st Cir. 1994); *Foundation for

Fair Contracting, Ltd.*, 259 F. Supp. 2d at 335-37.

    B.    31 U.S.C. § 3730(c)(5).

    Defendants also assert that Relator's *qui tam* action is prohibited by

the plain language of 31 U.S.C. § 3730(c)(5).  (Doc. 66, Ex. A at 9-13; 69 at

11-17.)  Section 3730(c)(5) states:

> Notwithstanding subsection (b), the Government
> may elect to pursue its claim through any alternate
> remedy available to the Government, including any
> administrative proceeding to determine a civil
> money penalty.  If any such alternate remedy is
> pursued in another proceeding, the person initiating

---

[4]A "broad interpretation" is contrary to the approach of this Circuit, in which "we will not give the statute a broader effect than that which appears in its plain language." *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499-1500 (11th Cir. 1991); *see also* 31 U.S.C. § 3733 (FCA provision outlining, in part, the process by which the Attorney General, "*before* commencing a civil *proceeding*" under the FCA or other false claims laws, may conduct an investigation using "civil *investigative*" demands) (emphasis added).

> the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.  Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. . . .

Defendants claim that the DOL's settlement with Madison County for $150,000 as payment for certain disallowed charges discovered during its program audit constitutes an "alternate remedy" for the fraudulent charges alleged in Lockhart's complaint; therefore his *qui tam* action cannot proceed.  Relator argues that because the DOL is not authorized to pursue fraud claims under the FCA, its previous settlement agreement with Madison County, one of a number of defendants in this action, is not an "alternate remedy" sufficient to prevent Mr. Lockhart from pursuing this cause.

In support of their position, Defendants rely heavily on the reasoning of the Sixth Circuit Court of Appeals in *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003).  In *Bledsoe*, the appellate court addressed a relator's motion under the FCA for recognition of his share of the proceeds from a settlement agreement executed between the Department of Justice ("DOJ"), acting on behalf of the Office of

Inspector General of the United States Department of Health and Human Services ("OIG-HHS"), and the defendant.   The settlement agreement required the defendant to repay Medicare overpayments, but it specifically excluded the relator's *qui tam* claims, which alleged the overpayments were made as a result of charges that violated the terms of the FCA.  The Sixth Circuit held that the Government could not exclude a relator's "statutory right to a share of the proceeds from the settlement of claims he or she had asserted" through an agreement to which the relator was not made a party. *Bledsoe*, 342 F.3d at 649.  The court concluded, "[i]f the government has recovered funds lost from conduct asserted in Relator's *qui tam* action, then the government has essentially settled Relator's claims," and the relator is thereby entitled to his statutory share of the proceeds under the FCA.  *Id.*; *see also United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1012-13 (9th Cir. 2001) (concluding that a suspension or debarment proceeding can constitute an "alternate remedy").  If the relator is excluded and forced to proceed with his *qui tam* action, the Sixth Circuit hypothesized, then the defendants might then "pay the civil penalties and double or treble damages associated with the very same claims for which they had already paid

penalties and damages by way of settlement," or the defendants could halt

the relator's claims by asserting an accord and satisfaction defense.

*Bledsoe*, 342 F.3d at 649.   The appellate court determined that both

outcomes were undesirable.

There are, however, a number of problems with applying the Sixth

Circuit's holding in this action.  Most importantly, the settlement agreement

at issue in this case does not exclude only Relator's *qui tam* claims; it

states:

> Notwithstanding any other provision of this Agreement, this Agreement does not preclude nor bar any investigative activities by the OIG, nor any other federal law enforcement agency, nor any criminal referrals by a federal law enforcement agency to the United States Department of Justice, nor any prosecutorial activities by the United States Department of Justice, **nor the pursuit of any civil or administrative monetary claims for the conduct being released that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3801-3812, or for fraud.**

(Doc. 67, Ex. T ¶ 7 (emphasis added).)   Because the Government's claims

under the FCA and/or for fraud in general were specifically excluded by the

settlement agreement, this Court cannot say that the Government settled

its fraud claims through this "alternate remedy." Moreover, the DOL, unlike the DOJ, does not have the authority under the FCA to pursue fraud claims on behalf of the Government.  *See, e.g.*, 31 U.S.C. § 3730(a); *United States ex rel. Haskins v. Omega Inst., Inc.*, 11 F. Supp. 2d 555, 559 (D. N.J. 1998).

A *qui tam* relator's action is not based "entirely on the loss suffered by the government." *United States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 138 (11th Cir. 1994).  In fact, "a *qui tam* relator suffers substantial harm and the *qui tam* provisions of the FCA are intended to remedy that harm."  *Id*. Although the amount recovered by the DOL in settlement may ultimately offset the recovery in this action pursuant to *United States v. Bornstein*, 423 U.S. 303 (1976), all defendants in this cause remain subject to the FCA's damage and penalty provisions if Relator's claim succeeds.  The Government has chosen not to intervene in this action, and Lockhart has "an interest in pursuing his claim independently of the government."  *See, e.g.*, *United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 739 (3d Cir. 1997).  Therefore, summary judgment is due to be denied.

V.     Conclusion.

For the reasons stated above, the motions for summary judgment filed by Madison County and Dr. Preyer will be denied.   A separate order in conformity with this opinion will be issued.

Done this <u>20th</u> day of <u>October 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297